[Civil No. 2647. Filed November 28, 1927.]

[261 Pac. 49.]

PACIFIC FRUIT EXPRESS COMPANY, a Corporation, Appellant, v. CITY OF YUMA, a Municipal Corporation, et al., Appellees.

Mr. Francis M. Hartman, and Mr. D. V. Cowden, (Mr. Alexander B. Baker, of counsel), for Appellant.

Mr. H. Wupperman, City Attorney, for Appellees.

ROSS, C. J.—The Pacific Fruit Express Company paid the taxes assessed and levied against its property for the year 1925 by the city of Yuma, to such city, under protest, and brought this action to recover such taxes, claiming that they were illegally collected. This method is provided by the statute, paragraph 4939, Civil Code of 1913. Judgment went against it in the trial court, and it appeals.

It is the contention of appellant that the appellee city, under the law, was without power to impose a tax upon its real property located in said city, for

city purposes, when used in connection with its operations as a private car line.

If chapter 9, title 49, Civil Code, is constitutional, we think the contention is sound. The appellant falls within the definition of a private car line, or private car company, as contained in that chapter; it being engaged, as shown by the record, in the business of furnishing and leasing refrigerator-cars, and supplying the same with ice, for the purpose of transporting fruits, vegetables and merchandise over lines of railway in Arizona and other states and owned by other persons and corporations. Therein (chapter 9, *supra*) the power of assessing and equalizing the property, both real and personal, of private car lines, and also fixing the tax rate thereon, is vested exclusively in the state tax commission, and the duty of collecting such taxes is imposed upon the state treasurer.

Paragraph 4953 requires private car lines operating in the state to make an annual statement to the state tax commission of all of its property, with details as to its use, value, and earnings; and by subdivision 14 thereof it is provided that such statement shall contain—

"the real estate, personal property, structures, machinery, fixtures and appliances, owned by said company, subject to taxation within this state, and the location and full cash value thereof in the county or city where the same is situated."

Paragraph 4955 provides that the tax commission shall ascertain and determine, on or before the first Monday in October, the full cash value of the property of private car lines, whether such property has been used in intrastate, transstate or interstate business.

Paragraph 4959, among other things, provides:

"The tax commission is hereby authorized and empowered each year to make a levy for purposes of taxation against the values assessed and determined

to exist in the state, as aforesaid, at a rate which shall equal the average rate of levy for all purposes in the several taxing districts of the state for the current year.''

''The taxes paid under this act shall be in lieu of all other taxes upon the properties and business of said private car companies, except as set forth in section 10 of this act (par. 4960). All taxes collected under the provisions of this act shall be credited to the state general fund. . . . And it is hereby made the duty of the state treasurer, annually, to collect from each private car company the amount of taxes, as determined and certified by the state tax commission.''

And paragraph 4960 provides that:

''Nothing in this act contained shall be construed to relieve any private car company from payment to the State Corporation Commission of the annual license tax, the annual registration fee or filing fee. . . .''

The appellee's theory seems to be that, because the property of appellant, situate within its limits, receives police protection, the city has, or should have, the right to make it contribute its proportion of the expenses of such protection, and that a law that relieves it from such burden operates unequally, since all the rest of the property in the city must help to bear the expense of city government.

Section 11, article 9, of the Constitution provides that ''the manner, method and mode of assessing, equalizing and levying taxes in the state of Arizona shall be such as may be prescribed by law.'' This gives plenary power to the legislature in the matter of taxation, and such power is limited only by the requirement that ''all taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax'' (§ 1, art. 9), and the provisions of section 2 of said article against exemptions other than those enumerated, and of course the ''due process'' and ''equal protection'' provisions of the federal Constitution.

It is not suggested, nor can it be, that the placing of the property of a private car line in a class to itself for the purposes of taxation is not permitted by the Constitution, or that such classification in its practical operation will necessarily violate the rule of uniformity. The capital of such a concern, consisting, as it does, almost entirely of rolling stock, the major part of its property, business, and earnings is without a situs, or, where it has a situs, the local value is usually negligible as compared with its operation as a whole. As is well said by appellant in its brief:

" . . . The apportionment of a unit value, by splitting it up among localities, involves problems both legal and economic that are avoided by making one unit assessment and taking the entire revenue for state purposes."

The rate of taxes on such property is not the state rate for other property but a very much higher rate. Theoretically, at least, it is a rate high enough to cause such property to bear the same burdens of taxation as other property in the taxing district. It must be "at a rate which shall equal the average rate of levy for all purposes in the several taxing districts of the state for the current year." The taxes collected from these concerns, being used for state purposes, reduces the sum total necessary for such purposes, and to the extent of such reduction lessens the rate for state purposes upon all other property of the state, including that in the city of Yuma. When reduced to its final analysis, the method adopted amounts to this: Private car lines pay the same, or practically the same, rate of taxes upon the full cash value of their property as other owners of property, but the tax is devoted to state purposes exclusively, whereas the taxes paid by other owners are apportioned among different taxing units.

It is not in any sense, as contended by appellee city, an exemption of appellant's property from taxation, but is a substituted tax. As the statute says, it is "in lieu of all other taxes upon the properties and business of said private car companies," except certain annual license taxes, registration and filing fees. The unit assessment provided in the statute is of all of the property, both real and personal, and of the business of such concern. The plain wording of the statute leaves no ground to argue that it was intended that real property should not be included in such assessment.

There is nothing in the charter of appellee city, or the general laws, or the Constitution, that undertakes to vest the city with unqualified power to collect taxes upon appellant's property. The Constitution, article 13, section 2, gives to cities containing more than thirty-five hundred population the right to frame charters for their own government "consistent with, and subject to, the Constitution and laws of the state." In the charter adopted by the appellee city under the above authority is the self-imposed limitation that the powers exercised by it shall not contravene the provisions of the United States Constitution, or the state Constitution, or the laws of the state. It is clear that the city's general power to tax property within its boundaries is taken away from it, so far as appellant's property is concerned, by the general law of the state providing that the property and business of private car lines shall be assessed and equalized by the state tax commission as a unit and taxes paid thereon at a rate fixed by such tax commission, and when collected turned into the general fund of the state for state purposes.

It appearing that appellant's property and business were properly assessed for taxes for the year 1925, and that it has paid the taxes thereon at the

rate fixed by the state tax commission, and that such taxes were in lieu of all other taxes, as such, it should have been given judgment for the recovery of the taxes assessed, levied and collected by the appellee and paid under protest.

The judgment is reversed, and the cause remanded, with directions that judgment be entered for appellant as prayed for.

LOCKWOOD and McALISTER, JJ., concur.